**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| EXCENTUS CORPORATION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:11-CV-03331 |
| GIANT EAGLE, INC., DAVID SHAPIRA, AND DANIEL SHAPIRA, | § § § § | |
| Defendants. | § § | |

**ORIGINAL COMPLAINT**

Plaintiff Excentus Corporation ("Excentus"), for its Original Complaint against Defendant Giant Eagle, Inc. ("Giant Eagle"), David Shapira, and Daniel Shapira (collectively, "Defendants"), alleges as follows:

**PARTIES**

1. Excentus is a Corporation duly organized and existing under the laws of the State of Texas, having a principal of business at 14241 Dallas Parkway, Suite 1200, Dallas, Texas 75254.

2. Giant Eagle is a corporation duly organized and existing under the laws of the State of Pennsylvania, having a principal place of business at 101 Kappa Drive, RIDC Park, Pittsburgh, Pennsylvania 15238. Because Giant Eagle does business in the State of Texas, but has not designated a resident agent for service of process as required by statute, Giant Eagle can be served with process by serving the Texas Secretary of State pursuant to Texas Civil Practice and Remedies Code § 17.044.

3. David Shapira is a Director of Excentus Corporation as well as an Officer of Giant Eagle. David Shapira may be served in care of Giant Eagle, Inc. at 101 Kappa Drive,

RIDC Park, Pittsburgh, Pennsylvania 15238. Because David Shapira does business in the State of Texas, but has not designated a resident agent for service of process as required by statute, David Shapira can be served with process by serving the Texas Secretary of State pursuant to Texas Civil Practice and Remedies Code § 17.044.

4. Daniel Shapira is a Director of Excentus Corporation as well as an Owner and/or Director of Giant Eagle. Daniel Shapira may be served in care of Giant Eagle, Inc. at 101 Kappa Drive, RIDC Park, Pittsburgh, Pennsylvania 15238. Because Daniel Shapira does business in the State of Texas, but has not designated a resident agent for service of process as required by statute, Daniel Shapira can be served with process by serving the Texas Secretary of State pursuant to Texas Civil Practice and Remedies Code § 17.044.

## JURISDICTION

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this action is between citizens of different states and the matter in controversy exceeds $75,000.00. This Court also has subject matter jurisdiction over the patent infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) because Excentus' patent infringement claims arise under the patent laws of the United States, including 35 U.S.C. § 271 et seq. This Court also has supplemental jurisdiction over the non-patent infringement claims pursuant to 28 U.S.C. § 1367 because the non-patent infringement claims are so related to the patent infringement claims (i.e. intertwined) that they form the same case or controversy under Article III of the United States Constitution. The claim for declaratory judgment relief is brought under 28 U.S.C. §§ 2201-2202 and Federal Rule of Civil Procedure 57.

6. The Court has personal jurisdiction over Giant Eagle because this action arises by virtue of Giant Eagle's position as a shareholder of Excentus and because Giant Eagle committed a tort in whole or in part in the State of Texas (as described in more detail below). As a result of

its status as a shareholder, Giant Eagle holds two seats on Excentus' Board of Directors. Giant Eagle has appointed David Shapira and Daniel Shapira (collectively, "the Shapiras") as Directors of Excentus Corporation to hold those seats. The breach of fiduciary duty claims were committed by the Shapiras in whole or in part in the State of Texas, and Giant Eagle aided, abetted, and knowingly participated in such breaches of fiduciary duty, in whole or in part, in the State of Texas. Those actions constitute a tort and have directly damaged Excentus, a Texas corporation with its principal place of business located in Dallas County, Texas. The claims also result from an agreement (described below) between Giant Eagle and Excentus, a Texas resident. That agreement establishes that Giant Eagle does business in the State of Texas pursuant to Texas Civil Practice and Remedies Code § 17.042(1) by contracting with a Texas resident (i.e., Excentus). The exercise of personal jurisdiction over the Defendants in the State of Texas in this case is authorized by Chapter 17 of the Texas Civil Practice and Remedies Code and does not offend traditional notions of fair play and substantial justice. Because personal jurisdiction exists over Giant Eagle in the State of Texas, the claims for patent infringement are properly in this federal court.

## VENUE

7. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 (b) and (c) because (1) this action arises from torts committed by the Defendants that have damaged Excentus in Dallas County, Texas, (2) Giant Eagle is a stockholder in and has entered into a contractual relationship with Excentus, a resident of Texas and this District, (3) a substantial part of the events or omissions giving rise to this claim occurred in this District, (4) a substantial part of property that is the subject of this action is situated in this District, and (5) the Defendants are subject to personal jurisdiction in this District at the time this case is commenced.

## FACTS

8. Excentus (formerly CCISTech, Inc.) was founded by Dickson Perry in 1996 in Dallas, Texas. Between 1998 and 2001, Excentus became a pioneer and leader in providing solutions, including knowhow, systems, and services, for grocery/gas cross-marketing programs using fuel discounts as consumer loyalty rewards and currently works with major retailers to assist them in implementing their fuel discount programs.

9. In 2001, Giant Eagle and Excentus began discussions regarding Excentus providing Giant Eagle with technology and services in support of Giant Eagle's efforts to design and test a gas/grocery cross-marketing program using fuel discounts as consumer loyalty rewards.

10. In February 2002, Excentus and Giant Eagle entered into a Software License and General Services Agreement and an Addendum was executed in February 2010 ("Agreement"). By the Agreement, Excentus agreed to provide solutions in support of the launch of Giant Eagle's "fuelperks!" program, which is Giant Eagle's gas/grocery cross-marketing program using fuel discounts as consumer loyalty rewards.

11. Pursuant to the Agreement, Excentus supported Giant Eagle in the launch and expansion of Giant Eagle's "fuelperks!" program, which has been successful and significantly benefitted Giant Eagle's business through increased sales and profits.

12. In addition to providing proprietary technology and related services to Giant Eagle under the Agreement, Excentus shared confidential information with Giant Eagle regarding Excentus' plan to form a national cross-marketing program that leveraged the Excentus solutions for gas/grocery solutions to include many other types of retailers that would benefit from using fuel discounts as consumer loyalty rewards to increase sales ("Excentus Coalition").

13. Giant Eagle was so impressed with the Excentus Coalition that it invested in Excentus twice (in 2004 and 2005) and became one of the largest Excentus shareholders.

14. As part of these transactions, Giant Eagle demanded that it have seats on the Excentus Board and the Shapiras soon joined the Excentus Board as directors. Giant Eagle additionally demanded that the number of Excentus officers be limited.

15. As part of the investment in Excentus, Giant Eagle committed to support Excentus' current and future business model by sharing information about Giant Eagle's "fuelperks!" program and making it a part of the Excentus Coalition. Also, an agreement[1] was entered whereby Excentus was licensed to use the "fuelperks!" brand to promote Excentus and the Excentus Coalition.

16. In 2005, Giant Eagle began urging Excentus to replace current directors with directors nominated by Giant Eagle. For example, Giant Eagle recommended and arranged introductions to one such potential director, who at the time was the CEO of another company in which Giant Eagle was an investor.

17. In 2005, Giant Eagle began to promote the sales and use of gift cards of other retailers in Giant Eagle grocery stores utilizing its "fuelperks!" program. The gift cards were provided by Blackhawk Network (a subsidiary of Safeway) ("Blackhawk").

18. As a result of the promotional activities, Giant Eagle's gift card sales grew exponentially. During this time, Excentus made multiple requests for Giant Eagle to share information regarding its "fuelperks!" program, which was information that Giant Eagle had agreed to provide to Excentus upon becoming an Excentus investor and shareholder.

---

[1] For clarity and the avoidance of doubt, Excentus brings no claim, action, proceeding, or suit against any of the Defendants with respect to any Trademark and Copyright License Agreement. Excentus is in compliance with such agreement.

19. In late 2006, David Shapira facilitated discussions between Blackhawk and Excentus that resulted in an offer from Blackhawk to acquire Excentus. David Shapira supported and encouraged Excentus management to complete this transaction.

20. During the due diligence phase of the transaction, Excentus educated Blackhawk on its business and competitors, including providing information to Blackhawk about Auto-Gas Systems, Inc. ("Auto-Gas") and its portfolio of patents relating to fuel discounts.

21. In 2007, Blackhawk began negotiations with Auto-Gas to acquire its fuel discounts patent portfolio. Upon learning of this and other information, Excentus terminated its discussions with Blackhawk, to the disappointment of David Shapira and Giant Eagle. During this process, Giant Eagle was also educated on the Auto-Gas patent portfolio.

22. In June 2008, after applying significant pressure on Giant Eagle to fulfill its obligations, Excentus finally entered into a license agreement with Giant Eagle for Excentus to use the "fuelperks!" brand, as the parties had agreed to when Giant Eagle gained an ownership interest in Excentus. No claim is brought or made with respect to this license agreement. Excentus is in compliance with such agreement.

23. Immediately following the execution of the licensing agreement for Excentus to use the "fuelperks!" brand, Excentus launched the Excentus Coalition program by initiating several gas/grocery cross-marketing programs for several grocers using the "fuelperks!" brand under its license from Giant Eagle. In addition, Excentus continued its business of executing other agreements that did not include the use of the "fuelperks!" brand.

24. Excentus also made formal requests for Giant Eagle to follow through on its commitments, which Excentus justifiably relied on as material inducements to allow Giant Eagle to gain an ownership interest in Excentus, including but not limited to: (1) sharing important

information about Giant Eagle's "fuelperks!" program with Excentus, (2) entering into an agreement by which Giant Eagle's "fuelperks!" program would become part of the Excentus Coalition, and (3) addressing numerous partnership issues, such as the participation of Giant Eagle personnel in Excentus' share group meetings that included other Excentus grocer customers, the sharing of information related to Giant Eagle's gift card sales and its relationship with Blackhawk, and the participation in and the sharing of information related to Giant Eagle's test of a payment card associated with its "fuelperks!" program introduced in conjunction with another Excentus shareholder.

25. In September 2008, Excentus acquired Auto-Gas's fuel discounts patent portfolio ("Excentus Patents"). Randy Nicholson, the father of Pay-at-the-Pump technology, is the primary inventor of many of these inventions and has sat on Excentus' Board of Directors since the acquisition, a move that the Shapiras approved and supported.

26. By 2008, Giant Eagle's sales of other retailers' gift cards promoted by its "fuelperks!" program had attained an estimated $500 million to $1 billion in sales. Around this time, Giant Eagle (i.e., Blackhawk's largest customer) renegotiated its agreement with Blackhawk. Upon information and belief, the final agreement granted Giant Eagle an ownership interest in Blackhawk, or at least granted Giant Eagle the right to acquire such an interest.

27. At all times, Excentus encouraged Giant Eagle to act in good faith to resolve numerous partnership issues, including but not limited to: (1) the failure of Giant Eagle to fulfill its commitments and obligations that Excentus had justifiably relied upon in allowing Giant Eagle to gain an ownership interest in Excentus, and (2) Giant Eagle's refusal to enter into the appropriate agreements for the "fuelperks!" program and to obtain a license to the Excentus Patents.

28.  Due to concerns that the Excentus Coalition would adversely impact Giant Eagle's gift card sales, Giant Eagle attempted to convince Excentus to abandon the Excentus Coalition strategy in favor of implementing Giant Eagle's approach of promoting and selling other retailers' gift cards. While continuing to use the Excentus Patents without a license, Giant Eagle also threatened to form its own coalition to compete with the Excentus Coalition.

29.  As Excentus directors, the Shapiras owed strict fiduciary duties to Excentus, including the duties of loyalty to Excentus and utmost good faith in their dealings with Excentus. The Shapiras also are officers and/or directors of Giant Eagle, and their actions described herein were taken on behalf of Giant Eagle and were adverse to Excentus; thus, the actions of the Shapiras described herein constitute the acts of Giant Eagle. Reference to Giant Eagle is reference to these acts.

30.  Beginning in 2005 and continuing to the present, Giant Eagle has embarked on a course of action to disrupt and gain control of Excentus through breach of fiduciary duties owed by the Shapiras to Excentus. As directors of Excentus, fiduciary duties are owed first to Excentus and not to Giant Eagle. Regardless, in many dealings related to Excentus, the Shapiras have placed Giant Eagle's interests ahead of Excentus' interests. This includes, but is not limited to, seeking third-party partners for its "fuelperks!" program contrary to its commitments to only do so through the Excentus relationship, dealings concerning the Excentus Patents, gift cards related to Blackhawk, payment offerings related to another Excentus customer, plans concerning the Excentus Coalition, and other business dealings related to Excentus. In short, whenever there was a choice to do what was best for Excentus and what was best for Giant Eagle, the Shapiras have consistently chosen to place Giant Eagle's interests ahead of Excentus' interests. For example, since Excentus acquired the Excentus Patents in 2008, an understanding has existed

between Excentus and Giant Eagle that the parties would negotiate a fair and reasonable license to the Excentus Patents. The Shapiras, as members of Excentus' Board of Directors in 2008, voted in favor of the transaction that transferred the fuel discounts patent portfolio to Excentus and allowed Mr. Nicholson to gain his seat on Excentus' Board of Directors. As discussed below, Giant Eagle clearly understood that it had no rights to the Excentus Patents, and signed a document stating as much in February 2010 (i.e., the Agreement). Recently, however, despite repeated demands to do so, Giant Eagle and the Shapiras have refused to act in good faith to negotiate a license or other agreement to obtain the right to use the Excentus Patents and to compensate Excentus fairly for such use by Giant Eagle. Because Giant Eagle is using the Excentus Patents without a license or other authorization to do so, Giant Eagle is an infringer of the Excentus Patents.

31.    In a telephone conversation that took place in November 2011, Giant Eagle President and CEO David Shapira (and Excentus Director) told Excentus President and CEO Dickson Perry that the Agreement granted Giant Eagle a license to the Excentus Patents, despite the plain language of the Agreement. Such a denial was intentional misconduct and a breach of the duty of loyalty and good faith duties owed to Excentus by David Shapira. At the Shapiras (and others at Giant Eagle) direction, knowledge, and consent, Giant Eagle is using the Excentus Patents daily in its business. A position that Giant Eagle has a license to the Excentus Patents, when the written record is directly contradictory, is not in good faith. Rather, the position is taken in an attempt to avoid the significant liability associated with infringement of the Excentus Patents by Giant Eagle. This intentional misconduct is in the best interest of Giant Eagle – not Excentus.

## **BREACH OF FIDUCIARY DUTY**

32. Excentus incorporates and adopts by reference paragraphs 1-31 as if fully set forth herein.

33. As directors of Excentus, the Shapiras owe fiduciary duties to Excentus. Those duties include a duty of loyalty and utmost good faith. The Shapiras have willfully and intentionally breached their duties to Excentus. On information and belief, the reason is because the Shapiras have desired to control and own Excentus as well as attempted to treat it as their own. With respect to dealings with Blackhawk, gift cards, and the use of fuel as a commodity, Giant Eagle and the Shapiras have used Excentus information to gain an advantage in the distribution, promotion, and sale of gift cards inside of Giant Eagle stores, all without remuneration to Excentus.

34. With respect to the treatment of the patent rights held by Excentus, Giant Eagle expressly acknowledged in February 2010 that it held no rights to any patents or other intellectual property of Excentus. This was consistent with the understanding between Giant Eagle/the Shapiras and Excentus that they would resolve any patent issues with Excentus at another time. Instead of acknowledging such understanding to resolve the issues, the Shapiras, aided and abetted by Giant Eagle, have claimed they hold rights to the patents in direct contradiction to the terms of the February 2010 Agreement.

35. Also in direct contradiction of the fiduciary duties owed to Excentus, Giant Eagle/the Shapiras have objected to the Fuel Rewards Network ("FRN") recently launched by Excentus. The FRN was developed by Excentus over time based on feedback from the market, including current and prospective Excentus customers (e.g., Giant Eagle), relating to its plans for the Excentus Coalition. It took years of hard work to find a suitable partner for the FRN as well as to implement it. Finally, the FRN is live and in the marketplace. Instead of cheering the

rollout of the FRN which is to the great benefit of Excentus, the Shapiras have complained of it and looked for excuses to object to it because they have placed their own interests and those of Giant Eagle ahead of Excentus.

36. Giant Eagle/the Shapiras have also disrupted Excentus Board of Director meetings, attempted to elicit information from these meetings which would benefit Giant Eagle, and used improper arguments to attempt to achieve their objectives.

37. The above-referenced conduct, and other similar conduct, constitutes a willful and intentional breach of the Shapiras fiduciary duties to Excentus, including a breach of the duty of loyalty and the duty to act in utmost good faith in their dealings with Excentus. Such breaches of fiduciary duty have injured Excentus and benefited Giant Eagle/the Shapiras. Discovery will further reveal that the actions of Giant Eagle/the Shapiras with respect to Excentus were taken to enhance Giant Eagle, not Excentus. Excentus was injured, and Giant Eagle/the Shapiras have gained as a result of these breaches. Giant Eagle has knowingly participated in the Shapiras' breaches of fiduciary duty, and has aided and abetted the Shapiras' breaches of fiduciary duty. Excentus sues for its actual damages and for a constructive trust to be placed on the proceeds, profits, funds, and other consideration obtained as a result of the breaches of fiduciary duty. This tort was committed at least in part in the State of Texas.

38. As a result of the Shapiras breaches of fiduciary duty and Giant Eagle's knowing participation, aiding, and abetting of such breaches, all profits earned by the Defendants as a result of their breaches of fiduciary duty should be disgorged.

### DECLARATORY JUDGMENT CLAIM

39. Excentus incorporates and adopts by reference paragraphs 1-38 as if fully set forth herein.

y

- 12 -

40. This is a complaint for declaratory relief pursuant to 28 U.S.C. §§ 2201-2202 and Federal Rule of Civil Procedure 57 in which Excentus asks the Court to clarify the rights and legal relationship between Excentus and Giant Eagle to settle the case and controversy at issue before it ripens into a violation of law or breach of duty.

41. Excentus and Giant Eagle are parties to the Agreement, which Giant Eagle now claims provides Giant Eagle with, among other things, a license to the Excentus Patents.

42. It is Excentus' position that the Agreement does not provide Giant Eagle with a license to the Excentus Patents, and in fact, the express terms of the Agreement confirm that Giant Eagle is granted no license to the Excentus Patents under the Agreement.

43. Whether Giant Eagle has a license to the Excentus Patents under the Agreement is a substantial controversy between Excentus and Giant Eagle of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. The presence or absence of a license to the Excentus Patents in the Agreement is an issue ripe for adjudication and capable of immediate judicial determination by reference to well-established contract interpretation principles and the four corners of the Agreement.

44. Excentus requests that the Court consider all evidence and declare that the Agreement does not provide Giant Eagle with a license to the Excentus Patents. Such a declaration would provide Excentus with the requested and specific relief from uncertainty and insecurity with respect to the legal relation between Giant Eagle and Excentus arising from the Agreement. Therefore, Excentus is asking this Court for real and specific relief through a decree of conclusive character based on actual facts that will allow the Court to adjudicate this case and controversy.

## INFRINGEMENT OF U.S. PATENT NO. 6,321,984

45. Excentus incorporates and adopts by reference paragraphs 1-44 as if fully set forth herein.

46. On November 27, 2001, United States Patent No. 6,321,984 ("the '984 Patent") was duly and legally issued for an invention entitled "Adjustable price fuel dispensing system." A copy of the '984 Patent is attached as Exhibit A.

47. The '984 Patent was assigned to Excentus, and Excentus holds all rights and interests in the '984 Patent.

48. Giant Eagle has engaged and is engaging in unauthorized conduct and activities that violate 35 U.S.C. § 271 et seq., constituting direct infringement, contributory infringement, and/or induced infringement, literally and/or under the doctrine of equivalents, of one or more claims of the '984 Patent, including but not limited to the Giant Eagle "fuelperks!" program directly and/or indirectly infringing at least claims 1, 5, 8, 14, and 15 of the '984 Patent.

49. The acts of infringement by Giant Eagle have caused damages to Excentus, and Excentus is entitled to recover from Giant Eagle the damages sustained by Excentus as a result of their wrongful acts in an amount subject to proof at trial. Giant Eagle's infringement of Excentus' exclusive rights under the '984 Patent will continue to damage Excentus' business, causing irreparable harm (including loss of market share), for which there is no adequate remedy at law, unless it is enjoined by this Court. Giant Eagle continues to wrongfully profit from activities that infringe the '984 Patent.

50. Furthermore, the infringements of the '984 Patent by Giant Eagle are willful and deliberate, entitling Excentus to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## UNFAIR COMPETITION

51. Excentus incorporates and adopts by reference paragraphs 1-50 as if fully set forth herein.

52. Giant Eagle's actions described herein constitute business conduct that is contrary to honest practice in commercial matters.

53. Giant Eagle gained an unfair advantage in the market by capitalizing on Excentus' efforts and success in its fuel discount systems by infringing its patent and gaining access to Excentus' confidential and proprietary information and technology and then using these for Giant Eagle's benefit and against Excentus in the marketplace, which are acts that constitute unfair competition under the common law.

54. Giant Eagle's acts were willful and in bad faith. Giant Eagle has continued to infringe Excentus' patent, use Excentus' confidential and proprietary information and technology against Excentus and will continue to do so, gaining an unfair advantage in the market by these acts of unfair competition. Excentus is entitled to injunctive relief, actual damages, and punitive damages as a result of these acts of unfair competition.

## JURY DEMAND

Excentus demands a trial by jury.

## PRAYER

WHEREFORE, Excentus respectfully prays that a final judgment be entered and that the following relief be granted:

(1) Ordering and adjudging that Excentus Corporation have and recover of and from Giant Eagle, Inc., David Shapira, and Daniel Shapira, jointly and severally, all the actual, compensatory, and exemplary damages pled for herein, costs of suit, lost profits, plus pre-judgment and post-judgment interest as allowed by law;

(2) Disgorging all profits earned by Giant Eagle, Inc., David Shapira, and Daniel Shapira as a result of their breaches of fiduciary duty;

(3) Ordering and adjudging that the '984 Patent is valid and has been and will continue to be infringed by Giant Eagle, Inc.;

(4) Ordering an accounting of all damages and that Excentus recover all damages sustained as a result of the acts of patent infringement and unfair competition by Giant Eagle, Inc.;

(5) Ordering preliminary and permanent injunctions enjoining the aforesaid acts of infringement and unfair competition by Giant Eagle, Inc., its officers, agents, servants, employees, subsidiaries and attorneys, and those persons acting in concert with them, including related individuals and entities, customers, representatives, dealers, and distributors;

(6) Ordering and adjudging enhanced damages pursuant to 35 U.S.C. § 284 against Giant Eagle, Inc.;

(7) Awarding attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law against Giant Eagle, Inc.;

(8) Ordering the imposition of a constructive trust as set forth above on the competing Giant Eagle program and all benefits flowing from it;

(9) Declaring that Giant Eagle has no patent license of any kind pursuant to the 2002 Software License and General Services Agreement to use the Excentus Patents; and

(10) Awarding Excentus such other and further relief as this Court deems just and proper.

| Dated: December 2, 2011 | Respectfully submitted,<br><br>BY: /s/ Brett C. Govett<br>Brett C. Govett<br>Texas Bar No. 08235900<br>Karl G. Dial<br>Texas Bar No. 05800400<br>FULBRIGHT & JAWORSKI, L.L.P.<br>2200 Ross Avenue, Suite 2800<br>Dallas, Texas 75201<br>Telephone: (214) 855-8000<br>Facsimile: (214) 855-8200<br>Email: bgovett@fulbright.com<br>Email: kdial@fulbright.com<br><br>ATTORNEYS FOR PLAINTIFF EXCENTUS CORPORATION |
|---|---|