**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| EXCENTUS CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:11-CV-03331 |
| | § | |
| GIANT EAGLE, INC., DAVID SHAPIRA, | § | |
| AND DANIEL SHAPIRA, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF EXCENTUS CORPORATION'S RESPONSE IN OPPOSITION TO**
**DEFENDANTS DAVID AND DANIEL SHAPIRA'S MOTIONS TO DISMISS**

Brett C. Govett
Texas Bar No. 08235900
Karl G. Dial
Texas Bar No. 05800400
FULBRIGHT & JAWORSKI, L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone:  (214) 855-8000
Facsimile:   (214) 855-8200
Email:  bgovett@fulbright.com
Email:kdial@fulbright.com

ATTORNEYS FOR PLAINTIFF EXCENTUS
CORPORATION

# TABLE OF CONTENTS

**Page**

SUMMARY OF RESPONSE ................................................................................................ 1

FACTS ................................................................................................................................. 3

    The Shapiras Are Members of the Excentus Board of Directors ...................................... 3

    The Shapiras Purposely Avail Themselves of the Benefits and Protections of
        Texas Law .............................................................................................................. 5

    The General Services Agreement Does Not Contain a Forum Selection Clause,
        but Involves Performance in Texas and is Governed by Texas Law .................... 6

    Excentus' Claim Against the Shapiras Does Not "Aris[e] Out of" the Stock
        Purchase Agreements ............................................................................................ 8

    The Shapiras Breached Their Duties of Loyalty and Utmost Good Faith ........................ 9

ARGUMENT AND AUTHORITIES ................................................................................. 10

    1.    Venue is Proper in the Northern District of Texas ................................. 10

    2.    The Shapiras Are Subject to Specific Personal Jurisdiction in
            Texas ...................................................................................................... 14

            A.    Northern District and Texas Case Law Confirm that the
                Court Has Specific Personal Jurisdiction Over the Shapiras ....... 15

            B.    The Exercise of Specific Personal Jurisdiction Over the
                Shapiras Comports With Traditional Notions of Fair Play
                and Substantial Justice ............................................................... 19

    3.    Excentus Properly Pleaded its Claim that the Shapiras Breached
            the Duty of Loyalty ................................................................................ 20

CONCLUSION ................................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...............................................................................................20, 21

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985)....................................................................................15, 17, 19, 20

*Burnham v. Superior Court of California,*
    495 U.S. 604 (1990)...............................................................................................18

*Carr v. Main Carr Development, LLC,*
    337 S.W.3d 489 (Tex. App.—Dallas 2011, pet. denied)..................................12

*Cole v. Tobacco Inst.,*
    47 F. Supp. 2d 812 (E.D. Tex. 1999).............................................17, 18, 19, 20

*Cox v. Central Insurex Agency, Inc.,*
    No. 3:11-CV-2267-B, 2012 WL 253882 (N.D. Tex. Jan. 26, 2012) (Boyle, J.) .........20, 21

*Floyd v. Hefner,*
    556 F. Supp. 2d 617 (S.D. Tex. 2008) ...........................................................22

*In re Frederick's of Hollywood, Inc.,*
    2000 WL 130630 (Del. Ch. Jan. 31, 2000)....................................................22

*Gearhart Indus., Inc. v. Smith Int'l, Inc.,*
    741 F.2d 707 (5th Cir. 1984) .................................................................11, 22

*Ginter v. Belcher, Prendergast & Laporte,*
    536 F.3d 439 (5th Cir. 2008) .................................................................12, 13

*Harrington v. State Farm Fire & Cas. Co.,*
    563 F.3d 141 (5th Cir. 2009)...................................................................20, 21

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310 (1945)...............................................................................15

*Jones v. Petty-Ray Geophysical, Geosource, Inc.,*
    954 F.2d 1061 (5th Cir. 1992) .................................................................14, 15

*Latshaw v. Johnston,*
    167 F.3d 208 (5th Cir. 1999) .................................................................15

*Law Offices of Ben C. Martin, LLP v. Dennis C. Sweet III, PA & Assocs.*,
   No 3:06-CV-1440, 2007 U.S. Dist. LEXIS 101728
   (N.D. Tex. Aug. 7, 2007) (Boyle, J.) ...................................................................14, 15, 19

*Leap Wireless Int'l, Inc. v. MetroPCS Comm., Inc.*,
   No. 2:06-CV-240, 2007 WL 541428
   (E.D. Tex. Feb. 15, 2007) (Ward, J.) ..............................................................17, 18, 19, 20

*Marinechance Shipping, Ltd. v. Sebastian*,
   143 F.3d 216 (5th Cir. 1998) ......................................................................................13

*MaxEn Capital, LLC v. Sutherland*,
   No. H-08-3590, 2009 WL 936895 (S.D. Tex. Apr. 3, 2009)............................................11

*Miller v. McEachern*,
   No. 3:07-CV-1997-M, 2008 WL 4131725
   (N.D. Tex. Sept. 2, 2008) (Lynn, J.) ..................................................15, 16, 17, 18, 19, 20

*In re NYMEX S'holder Litig.*,
   2009 WL 3206051 (Del. Ch. Sept. 30, 2009) ....................................................................22

*Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*,
   139 F.3d 1061 (5th Cir. 1998) ......................................................................................11

*Pinnacle Interior Elements, Ltd. v. Panalpina, Inc.*,
   No. 3:09-CV-0430-G, 2010 WL 445927
   (N.D. Tex. Feb. 9, 2010) (Fish, J.)................................................................10, 11, 12, 13

*Psarros v. Avior Shipping, Inc.*,
   192 F. Supp. 2d 751 (S.D. Tex. 2002) ....................................................................10, 12

*Rittenmeyer v. Grauer*,
   104 S.W.3d 725 (Tex. App.—Dallas 2003, no pet.)..........................................................19

*Roth v. Mims*,
   No. 3:00-CV-04470-L, 298 B.R. 272 (N.D. Tex. Mar. 14, 2003) (Lindsay, J.)...............12

*Shaffer v. Heitner*,
   433 U.S. 186 (1977)........................................................................................................18

*Soporex, Inc. v. Linehan*,
   2011 WL 5911674 (Bankr. N.D. Tex Nov. 28, 2011) (Houser, J.) ...................................22

*TexVa, Inc. v. Boone*,
   300 S.W.3d 879 (Tex. App.—Dallas 2009, pet. denied)....................15, 16, 17, 18, 19, 20

*TIG Ins. Co. v. Aon Re, Inc.*,
   521 F.3d 351 (5th Cir. 2008) ......................................................................................11

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)...............................................................................................................19

## RULES AND STATUTES

28 U.S.C. §1391 ...................................................................................................................13

Federal Rule of Civil Procedure 8(a) ...................................................................................20

Federal Rule of Civil Procedure 12(b)....................................................10, 15, 20, 21, 23

Texas Business Corporation Act Article 9.10(B) ..................................................................5

Texas Business Organizations Code ......................................................................................6

Texas Civil Practice & Remedies Code § 17.042(2) ...........................................................14

Plaintiff Excentus Corporation ("Excentus") files this Response in Opposition to Defendants David and Daniel Shapira's Motions to Dismiss, and would respectfully show the Court as follows:

## SUMMARY OF RESPONSE

Excentus alleges a single cause of action against David and Daniel Shapira (the "Shapiras"), for breaches of the duties of loyalty and utmost good faith they owe as directors of Excentus, a Texas corporation based in Dallas, Texas.  *See* Compl. (Dkt. 22) ¶¶ 32-37; Pl. App. 2, 8-9.[1]  These breaches occurred, in significant part, in Texas.  *See* Compl. (Dkt. 22) ¶¶ 32-37; Pl. App. 8-9.  The duties the Shapiras owe to Excentus as directors arise under Texas common law, not under any contract.  In fact, no contract gives rise to Excentus' claim against the Shapiras, and the limited forum selection clause asserted by the Shapiras does not apply.

The Shapiras' Motions to Dismiss (Dkt. 27) and Brief in Support (Dkt. 28) twist and misconstrue the allegations in Excentus' Second Amended Complaint (the "Complaint" or "Compl."), and ignore the applicable case law as to venue, personal jurisdiction and the single cause of action alleged.  For example, the two Stock Purchase Agreements, which contain the forum selection clause relied upon by the Shapiras, are ___**not**___ "at the heart of Excentus' claims" against the Shapiras.  *See* Shapiras' Motions to Dismiss (Dkt. 27), p. 2.  To the contrary, the Stock Purchase Agreements are ___**not**___ mentioned in the Complaint and do not form any element of any cause of action against the Shapiras.  *See* Compl. (Dkt. 22.)  The only contract mentioned in the Complaint, the Software License and General Services Agreement (the "General Services Agreement") and an Addendum thereto, does ___**not**___ contain a forum selection clause.  *See* Def. App. 8-29, 129-34.  Excentus' claim against the Shapiras likewise does not arise out of the General Services Agreement or its Addendum.

---

[1]Excentus' Appendix will be cited as "Pl. App. __;" Defendants' Appendix will be cited as "Def. App. __."

In addition, the contractual forum selection clause in the Stock Purchase Agreements is very narrow, applying only to claims "ARISING OUT OF THIS AGREEMENT." *See* Def. App. 53, 89-90. Recent case law construing a similar clause establishes that this language should be ***narrowly construed***, and does not apply to torts that have nothing to do with the substance of the underlying agreement. The forum selection clause in the Stock Purchase Agreements does not apply to the single tort claim asserted against the Shapiras.

The Texas long-arm statute and due process allow this Court specific personal jurisdiction over the Shapiras, based on (among other things) their contacts with Texas as long-time directors of Excentus (a Texas corporation based in Texas), their participation in board meetings in Texas at which they learned about Excentus' patent strategies and confidential information about Excentus' business operations that they have caused Giant Eagle, Inc. ("Giant Eagle") to use without compensation to Excentus, their communications with Excentus in Texas in which they asserted that the General Services Agreement provides Giant Eagle with a license to use Excentus' patents, their communication with Excentus in Texas in which they cite Texas statutes and Texas cases to demand quarterly board meetings, and the harm caused to Excentus in Texas. Several cases on point, including one cited by the Shapiras, confirm that these contacts with Texas are sufficient to establish specific personal jurisdiction over the Shapiras under the Texas long-arm statute and due process.

In addition, the facts pleaded in the Complaint sufficiently allege the single claim asserted against the Shapiras – for breach of the duties of loyalty and utmost good faith – as set forth in the case law applicable to this tort. The Shapiras' attempt to re-cast the allegations, as merely being outvoted, is not the claim alleged. Rather, the Complaint alleges that the Shapiras engaged in self-dealing and have benefitted themselves and Giant Eagle at the expense of

Excentus, in violation of the duties of loyalty and utmost good faith they admittedly owe to Excentus.  Moreover, the exculpatory clause in the Excentus Articles of Incorporation (relied upon by the Shapiras) does not apply – it applies only to contracts entered **_with_** Excentus.  It is inapplicable to self-dealing and breaches of duties of loyalty and good faith that do not involve contracts with Excentus.

The Shapiras' Motions should be denied.

### FACTS

**The Shapiras Are Members of the Excentus Board of Directors.**

Excentus is a Texas corporation headquartered in Dallas, Texas.  Compl. (Dkt. 22) ¶ 1; Pl. App. 2.  Founded in 1996, Excentus is a pioneer and leader in providing solutions, including knowhow, systems, and services for grocery/gas cross-marketing programs using fuel discounts as consumer loyalty rewards, and currently works with major retailers to assist them in implementing their fuel discount programs.  Compl. (Dkt. 22) ¶ 8; Pl. App. 2-3.

David Shapira has been an Excentus director since September 30, 2004.  Pl. App. 5. Daniel Shapira has been an Excentus director since January 24, 2006.  *Id.*  As directors, the Shapiras admittedly owe duties of loyalty and utmost good faith to Texas-based Excentus.  *See* Shapiras' Brief (Dkt. 28), p. 9.  Excentus sues the Shapiras for one thing:  breaching the duties of loyalty and utmost good faith they owe to Excentus as directors, a significant part of which is alleged to have occurred in Texas.  Compl. (Dkt. 22), ¶¶ 32-37.

Since the Shapiras became directors, the Excentus Board of Directors has held meetings at Excentus' offices in Texas on numerous occasions.  The Shapiras have attended the following meetings held in Excentus' offices in Texas, either in person or by telephone (as set forth below):

| **Date of Excentus Board Meeting** | **Did David Shapira Attend?** | **Did Daniel Shapira Attend?** |
|---|---|---|
| December 14, 2004 | Yes, by Telephone | Not yet a director |
| April 27, 2006 | Yes, *in Person in Texas* | Yes, *in Person in Texas* |
| December 7, 2006 | Yes, by Telephone | Yes, by Telephone |
| January 31, 2007 | Yes, by Telephone | Yes, by Telephone |
| July 23, 2008 | Yes, by Telephone | Yes, by Telephone |
| September 5, 2008 | Yes, by Telephone | Yes, by Telephone |
| October 29, 2008 | Yes, by Telephone | Yes, by Telephone |
| January 28, 2009 | Yes, by Telephone | Yes, by Telephone |
| May 7, 2009 | Yes, by Telephone | Yes, by Telephone |
| July 29, 2009 | Yes, by Telephone | Yes, by Telephone |
| November 5, 2009 | Yes, by Telephone | Yes, by Telephone |
| January 28, 2010 | Yes, by Telephone | Yes, by Telephone |
| June 7, 2010 | Yes, by Telephone | Yes, by Telephone |
| March 2, 2011 | Yes, by Telephone | Yes, by Telephone |
| July 21, 2011 | Yes, by Telephone | No |
| October 26, 2011 | Yes, by Telephone | Yes, by Telephone |

Pl. App. 6.  During these board meetings, Excentus shared (among other things) confidential information with the Shapiras, including:  (i) Excentus' operations, customers (some of which were also competitors of Giant Eagle), financial results, business plans, business opportunities and intellectual property; and (ii) Excentus' plan to form a national cross-marketing program to leverage the Excentus programs to include many other types of retailers that would benefit all the

retailers involved (as well as Excentus) by using fuel discounts as consumer-loyalty rewards to increase sales. *Id.* at 7, 25-51.

**The Shapiras Purposely Avail Themselves of the Benefits and Protections of Texas Law.**

In addition to attending the above meetings, the Shapiras also executed and sent to Excentus' offices in Texas the following Written Consents of the Board of Directors of Excentus in lieu of a meeting:  (i) on or about November 11, 2005, David Shapira executed a Written Consent to, among other things, amend the Bylaws of Excentus (Daniel Shapira was not yet a director); and (ii) on or about August 28, 2008, both of the Shapiras executed a Written Consent to authorize the merger with Auto-Gas Systems, Inc. ("Auto-Gas") in a transaction by which Excentus acquired the portfolio of patents at issue in this case (the "Excentus Patents"). *Id.* at 7; 53-60, 62-70.  These Written Consents both stated that they were being executed by the directors of Excentus, including the Shapiras, pursuant to Article 9.10(B) of the Texas Business Corporation Act, and that, in lieu of a special meeting of the Board of Directors, each of the directors consented to the adoption of the resolutions to accomplish Excentus' actions as described above. *Id.*  By executing the Written Consent dated August 28, 2008, the Shapiras both voted in favor of Excentus acquiring Auto-Gas and the Excentus Patents. *Id.* at 7, 53-60, 62-70.

On November 11, 2011, Defendant Daniel Shapira sent a letter to Excentus and at least one director in Texas requesting, on behalf of both of the Shapiras, that Excentus hold additional meetings of its Board of Directors. *Id.* at 8, 72-73.  Daniel Shapira's letter began with the Shapiras purposefully availing themselves of the benefits and protections of Texas law:

> Dear Directors of Excentus and Dickson:
>
> ***Pursuant to our rights as Directors under*** the Excentus Corporation bylaws and ***Texas business corporations law***, David and I are writing this letter to call for quarterly Special Meetings of the Board of Directors in 2012, to be

held in January, April, July, and October respectively, on mutually-convenient
dates to be arranged by Dickson.

*Id.* at 72 (emphasis added).   Also, Daniel Shapira's letter mentions the Texas Business

Organizations Code and cites Texas case law that the Shapiras' rights as directors are

"enforceable by court order." *Id.* at 73.

In addition to the November 11, 2011 letter, the Shapiras have sent numerous emails to

Texas relating to Excentus business and Board issues, including revisions to the minutes of

Board meetings they attended and business issues Excentus was addressing. *Id.* at 8, 80-110.

Finally, David Shapira has had numerous telephone conversations with Dickson Perry,

Excentus' Chairman of the Board and Chief Executive Officer, while Mr. Perry was in Texas,

and in those conversations David Shapira stated that it was Giant Eagle's position that its

agreements with Excentus granted a patent license to Giant Eagle. *Id.* at 8.   During 2011, David

Shapira specifically told Dickson Perry that Giant Eagle previously had been willing to pay

Excentus for a patent license, but at that time was not going to pay Excentus anything for the use

of the Excentus Patents. *Id.*

These contacts with Texas, and the Shapiras' purposefully availing themselves of the

benefits and protections of Texas law, are directly related to Excentus' claim that the Shapiras

breached their duties of loyalty and utmost good faith because the Shapiras have learned

Excentus' confidential information during board meetings and then used that information to

benefit themselves and Giant Eagle at the expense of Excentus.

**The General Services Agreement Does Not Contain a Forum Selection Clause, but Involves
Performance in Texas and is Governed by Texas Law.**

The only contract mentioned in the Complaint is the 2002 General Services Agreement

(defined in the Complaint as "the Agreement") and its 2010 Addendum. *See* Compl. (Dkt. 22)

¶¶ 10, 29, 39-41; Def. App. 8-29, 129-34.   Giant Eagle entered into that General Services

Agreement with Excentus in February 2002.[2]  Under the General Services Agreement, Excentus provided services to Giant Eagle and specific software that Giant Eagle uses in its "fuelperks!" gas/grocery cross-marketing program using fuel discounts as consumer loyalty rewards.  Def. App. 8-29, 129-34.  The General Services Agreement was negotiated by Dickson Perry, the Chief Executive Officer of Excentus, in significant part while Mr. Perry was on the telephone with both of the Shapiras, and Mr. Perry was located in Texas.  Pl. App. 4.  The services performed by Excentus under the General Services Agreement were performed by Excentus in significant part in Texas, and the software provided by Excentus to Giant Eagle was developed almost entirely in Texas.  Pl. App. 4.  Likewise, the 2010 Addendum to the General Services Agreement was negotiated by Mr. Perry in significant part while he was on the telephone with both of the Shapiras, and Mr. Perry was located in Texas.  Pl. App. 4.

Both the General Services Agreement and its 2010 Addendum are expressly "governed by and construed in accordance with the laws of the State of Texas."  Def. App. 14, 131 (the Addendum does not modify the "Jurisdiction" clause of the General Services Agreement).  Neither the General Services Agreement nor its 2010 Addendum contain a forum selection clause.  Def. App. 8-29, 129-34.

In their Brief, the Shapiras incorrectly assert that "Excentus alleged that its claims 'result from' its agreements with Giant Eagle."  [Shapiras' Brief (Dkt,. 28), at p. 3].  That is ***not*** what Excentus alleged.  What Excentus alleged, in relation to personal jurisdiction over Giant Eagle, was that its "claims also result from ***an agreement*** (described below) between Giant Eagle and Excentus, a Texas resident."  *See* Compl. (Dkt. 22) ¶ 6 (emphasis added).  The singular

---

[2]The General Services Agreement originally was entered between CCISTECH, Inc. and Giant Eagle, and thereafter CCISTECH changed its name to Excentus.  Pl. App. 3.

agreement that Excentus references, which was described in paragraph 10 of the Complaint, is the General Services Agreement, not the Stock Purchase Agreements.

**Excentus' Claim Against the Shapiras Does Not "Aris[e] Out of" the Stock Purchase Agreements.**

The Stock Purchase Agreements (Def. App. 30-99) were executed in connection with Giant Eagle's two separate investments in Excentus (one in 2004 and another in 2005). Pl. App. 4. A provision in the Stock Purchase Agreements grants Giant Eagle the right to nominate two people to stand for election to the Excentus Board of Directors. Def. App. 48, 85. Each of the Stock Purchase Agreements contains a narrow forum selection clause that reads as follows:

> **VENUE FOR ANY ACTION <u>ARISING OUT OF THIS AGREEMENT</u> SHALL RESIDE EXCLUSIVELY IN THE COUNTY IN WHICH THE RESPONDENT'S PRINCIPAL OFFICES ARE LOCATED.**

Def. App. 53, 89-90 (underlining added). Excentus' claim against the Shapiras does not "arise out of" the Stock Purchase Agreements; rather, it arises from the Shapiras breaches of duties several years after they were elected as directors of Excentus. Compl. (Dkt. 22) ¶¶ 32-37, Pl. App. 8-9. The Stock Purchase Agreements are not cited in or relied upon in the Complaint, and Excentus does not contend that the Stock Purchase Agreements were breached. Compl. (Dkt. 22) ¶¶ 32-37. Furthermore, the Stock Purchase Agreements do not mention, refer to, define, or otherwise give rise to the duties of loyalty and utmost good faith the Shapiras owe as directors of Excentus. *See* Def. App. 66-104. To the contrary, Texas common law gives rise to the duties the Shapiras' owe to Excentus.

The Shapiras have informed Excentus that David Shapira is the Chairman of Giant Eagle's Board of Directors, and Daniel Shapira is Giant Eagle's outside counsel and advisor. Pl. App. 3.

**The Shapiras Breached Their Duties of Loyalty and Utmost Good Faith.**

As alleged in the Complaint, after becoming Excentus directors (and after the General

Services Agreement and after the Stock Purchase Agreements), the Shapiras have breached their

duties of loyalty and good faith by taking the following actions:

(i) The Shapiras refused to act in good faith to negotiate a license or other agreement to provide Giant Eagle with the right to use the Excentus Patents and to compensate Excentus fairly for such use [Compl. (Dkt. 22) ¶ 29];

(ii) David Shapira has contended in telephone calls with Excentus Chairman and CEO, Dickson Perry, while Mr. Perry was in Texas, that the agreements between Excentus and Giant Eagle grant Giant Eagle a license to use the Excentus Patents, despite the General Services Agreement's plain language to the contrary, thereby denying Excentus remuneration for use of such patents [*Id.* ¶ 30];

(iii) The Shapiras are knowingly directing and consenting to Giant Eagle's daily use of the Excentus Patents without fairly compensating Excentus for such use [*Id.* ¶ 30];

(iv) The Shapiras used Excentus' information to gain an advantage in the distribution, promotion, and sale of gift cards inside Giant Eagle's stores without remuneration to Excentus [*Id.* ¶ 32];

(v) The Shapiras have caused Giant Eagle to infringe the Excentus Patents without remuneration to Excentus [*Id.* ¶ 33];

(vi) The Shapiras have interfered with the implementation of Excentus' Fuel Rewards Network [*Id.* ¶ 34];

(vii) The Shapiras have caused Excentus' damages, which are, in part, the proceeds, profits, funds, and other consideration obtained through the Shapiras' above-listed breaches of the duty of loyalty and utmost good faith they owe to Excentus [*Id.* ¶ 36].

*See also* Pl. App. 8-9.  This intentional conduct by the Shapiras is contrary to the best interest of

Excentus.  *Id.* at 9.

The Shapiras' tortious actions were committed in significant part in Dallas, Texas.  For

example, the Shapiras gained access to Excentus' confidential information by attending

Excentus' Board meetings that were held in Texas either in person or by phone.  *Id.* at 6-7.

David Shapira has stated in phone calls with Dickson Perry while Perry was located in Texas,

that Giant Eagle has a license to use the Excentus Patents, despite the fact that the Addendum to

- 9 -

the General Services Agreement expressly states that no license exists for the Excentus Patents. *Id.* at 8; Def. App. 129.  Furthermore, because Excentus is a Texas corporation with its principal place of business in Dallas, Texas, the injury the Shapiras caused Excentus to suffer was sustained in Dallas, Texas.  Pl. App. 2, 8-9.

## ARGUMENT AND AUTHORITIES

### 1.    Venue is Proper in the Northern District of Texas.

The Shapiras rely exclusively on a narrow forum selection clause in the Stock Purchase Agreements as the sole basis for their motion to dismiss under Federal Rule 12(b)(3); however, the forum selection clause in those contracts does not apply to the claim asserted against the Shapiras because the claim does not "**ARIS[E] OUT OF**" the Stock Purchase Agreements – a touchstone for the applicability of the forum selection clause.  *See* Def. App. 53, 89-90 (emphasis in original).

A tort claim falls within the scope of a contractual forum selection clause only when the interpretation of the contract affects the resolution of the claim.  *Pinnacle Interior Elements, Ltd. v. Panalpina, Inc.*, No. 3:09-CV-0430-G, 2010 WL 445927, at *5 (N.D. Tex. Feb. 9, 2010) (Fish, J.) (also holding that whether a claim falls within the scope of a forum selection clause is a question of federal law); *see also Psarros v. Avior Shipping, Inc.*, 192 F. Supp. 2d 751, 754 (S.D. Tex. 2002).  In *Pinnacle*, Judge Fish addressed a forum selection clause with similar language to the forum selection clause in the Stock Purchase Agreements, and held that it should be narrowly construed.  2010 WL 445927, at *5.  Judge Fish explained the importance of the language used in a forum selection clause and the difference between narrow and broad clauses as follows:

> The language of the forum selection clause is particularly important. Clauses that extend to all disputes that "relate to" or "are connected with" the contract are construed broadly, while ***clauses that cover disputes "arising out of"*** or over "the implementation and interpretation of" the contract ***are construed narrowly***.  Courts also look to the operative facts

that underlie the alleged causes of action: "*If the substance of the plaintiff's claims, stripped of their labels, does not fall within the scope of the forum selection clause, the clause cannot apply*."

*Id.* (emphasis added) (citing *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.,* 139 F.3d 1061, 1067 (5th Cir. 1998); *see also MaxEn Capital, LLC v. Sutherland,* No. H-08-3590, 2009 WL 936895, at *6 (S.D. Tex. Apr. 3, 2009) (recognizing a distinct difference between broad and narrow forum selection clauses). Under Judge Fish's analysis – that "relate to" clauses are construed broadly, while "arise out of" clauses are construed narrowly – the forum selection clause in the Stock Purchase Agreements is narrowly tailored.

Excentus' sole cause of action against the Shapiras does not involve an interpretation of the Stock Purchase Agreements, nor do any of the elements of Excentus' claim against the Shapiras "aris[e] out of" the Stock Purchase Agreements. *See Pinnacle*, 2010 WL 445927 at *5; Compl. (Dkt. 22). Excentus has alleged the Shapiras breached their duties of loyalty and utmost good faith, tort causes of action that arise under Texas law and are based on the Shapiras' actions long after they were elected as directors of Excentus. Compl. (Dkt. 22) ¶¶ 32-37; *see TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 355 (5th Cir. 2008) (citation omitted) (under Texas law, a cause of action for breach of fiduciary duty accrues when the wrongful act causes legal injury). This is not artful pleading; any fair reading of the Complaint reveals that no cause of action arises out of the Stock Purchase Agreements. As the Fifth Circuit recognizes, the fiduciary duties owed by corporate directors "are creatures of state common law." *Gearhart Indus., Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 719 (5th Cir. 1984). Judge Lindsay has also recognized that it is the relationship itself between directors and the corporation that imposes fiduciary duties on corporate directors under Texas law:

> The ***relationship*** of officers and directors to a corporation is a fiduciary one imposing upon them the duty to exercise their powers as officers and directors solely for the benefit of the corporation and its stockholders.

> Implicit in this duty is that a director or officer will not exercise his power to serve his own personal interest at the expense of the corporation and its stockholders.

*Roth v. Mims*, No. 3:00-CV-04470-L, 298 B.R. 272 (N.D. Tex. Mar. 14, 2003) (Lindsay, J.) (emphasis added, citations omitted) (upholding a judgment against a corporate director for breaching his duty of loyalty to the corporation).  Texas common law, not the Stock Purchase Agreements, gives rise to Excentus' claim against the Shapiras for breach of their fiduciary duties.  *See Carr v. Main Carr Development, LLC*, 337 S.W.3d 489 (Tex. App.—Dallas 2011, pet. denied) (refusing to compel arbitration of company's breach of fiduciary duty claim against its director because the company's claim is an "independent tort claim" that "arises under general obligations imposed by Delaware law and is capable of determination without reference to [the agreement containing the arbitration clause]").

At most, the Stock Purchase Agreements provide the background facts as to how the Shapiras were nominated for election to the Excentus Board of Directors, but the claim that the Shapiras later breached their duties of loyalty and utmost good faith (years after they were elected to the Board) cannot have "aris[en] out of" the Stock Purchase Agreements.  Excentus' claim against the Shapiras does not involve any interpretation of the Stock Purchase Agreements – which do not mention, refer to, define, or otherwise give rise to the fiduciary duties the Shapiras owe to Excentus – so the narrow forum selection clause in those agreements is "irrelevant to the instant [tort-based] action."  *Psarros*, 192 F. Supp. 2d at 753-54; *see also Pinnacle*, 2010 WL 445927, at *5 (narrow forum selection clauses saying "arise from" do not encompass tort claims that have nothing to do with the substance of the agreement containing the forum selection clause).

The two cases on which the Shapiras rely are inapposite.  In *Ginter v. Belcher, Prendergast & Laporte*, 536 F.3d 439 (5th Cir. 2008), although the Plaintiff asserted tort-based

claims, the court held that plaintiffs were in fact "complaining about the failure of Belcher [the defendant] to fulfill his ***contractual obligations***" under the very contract that contained the forum selection clause; therefore, the forum selection clause applied. *Id.* at 445 (emphasis added). In stark contrast, Excentus is not complaining of the Shapiras' failure to fulfill any contractual obligations under the Stock Purchase Agreements; rather, Excentus has sued the Shapiras for breaching their common law, not contractual, obligations. *Ginter* is inapplicable.

The Shapiras citation to *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216 (5th Cir. 1998), is similarly unavailing. *Marinechance* does not apply for at least two reasons. First, the contract in *Marinechance* involved a broad forum selection clause that applied to "any and all disputes arising out of ***or by virtue of***" the contract (*Id.* at 222, emphasis added); whereas, the forum selection clause in the Stock Purchase Agreements in this case applies only to claims that "aris[e] out of" that contract. *See Pinnacle*, 2010 WL 445927, at \*5. Second, in contrast to the facts of *Marinechance*, the present case does not involve negligence claims arising during the course of employment that was subject to an employment contract; instead, this case involves tortious conduct (breach of duty of loyalty and utmost good faith) that occurred long after, and wholly separate and distinct from, the Stock Purchase Agreements. *See* 143 F.3d at 219-20. The rationale in *Marinechance* does not apply to the forum selection clause in the Stock Purchase Agreements in this case.

Because the narrow forum selection clause in the Stock Purchase Agreements does not encompass Excentus' tort-based claim against the Shapiras, venue is proper in the Northern District of Texas under 28 U.S.C. §1391, because: (i) Excentus' claim arises from torts committed by the Shapiras that have damaged Excentus in Dallas, (ii) a substantial part of the events or omissions giving rise to the claim occurred in this District, and (iii) the Shapiras were

subject to personal jurisdiction in this District at the time the case was commenced (as set forth below). The Court should deny the Shapiras' motion to dismiss for improper venue.

**2.**     **The Shapiras Are Subject to Specific Personal Jurisdiction in Texas.**

The Shapiras are subject to specific personal jurisdiction in Texas because they purposefully availed themselves of the benefits and protections of Texas in many ways, including: (i) serving on the Board of Directors of Texas-based Excentus for many years; (ii) travelling to Texas to attend at least one Excentus Board meeting and participating by telephone in numerous other Excentus Board meetings held in Texas (during which they obtained and later took advantage of confidential information about Excentus' business and patents); (iii) executing and sending to Texas at least two Written Consents in lieu of Board meetings (including to amend Excentus' Bylaws); (iv) sending at least one letter to Texas citing Texas statutes and Texas cases to demand additional Excentus Board meetings; and (v) sending numerous emails to Texas regarding Excentus business and Board issues. Excentus' claim against the Shapiras relates directly to the above-listed Shapira contacts with Texas.

Personal jurisdiction may be exercised over a nonresident if: (i) the party is amenable to service of process under a state's long-arm statute; and (ii) the assertion of jurisdiction comports with constitutional due process. *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992); *Law Offices of Ben C. Martin, LLP v. Dennis C. Sweet III, PA & Assocs.*, No 3:06-CV-1440, 2007 U.S. Dist. LEXIS 101728, at *14 (N.D. Tex. Aug. 7, 2007) (Boyle, J.). The Shapiras meet both of these elements as set forth below.

The Shapiras are amenable to service of process under the Texas long-arm statute because they are nonresidents who are alleged to have "commit[ted] a tort in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE § 17.042(2). Because the Texas long-arm statute extends to the limits of constitutional due process, the only relevant inquiry is whether exercising

jurisdiction over the defendant is constitutionally permissible.  *Jones*, 954 F.2d at 1067-68; *Law Offices of Ben C. Martin*, 2007 U.S. Dist. LEXIS 101728, at *7.

Federal due process is satisfied if:  (i) the nonresident purposefully availed himself of the benefits and protections of Texas by establishing minimum contacts with Texas such that the defendant should "reasonably anticipate being haled into court there;" and (ii) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Jones*, 954 F.2d at 1068; *Law Offices of Ben C. Martin*, 2007 U.S. Dist. LEXIS 101728, at *8.  Specific jurisdiction exists when the defendant's contacts are related to the cause of action.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Law Offices of Ben C. Martin*, 2007 U.S. Dist. LEXIS 101728, at *9.  After a defendant challenges jurisdiction through a Rule 12(b)(2) motion to dismiss, a plaintiff can meet its burden by presenting a prima facie case for jurisdiction.  *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

> ### A.   Northern District and Texas Case Law Confirm that the Court Has Specific Personal Jurisdiction Over the Shapiras.

Contrary to the Shapiras' contention in their Motions to Dismiss, numerous cases hold that specific personal jurisdiction exists over nonresident defendants who breach a duty of loyalty owed to a Texas entity based in Texas, partly because such duties exist only by virtue of the defendants' connections with Texas.  *See Miller v. McEachern*, No. 3:07-CV-1997-M, 2008 WL 4131725, at *3 (N.D. Tex. Sept. 2, 2008) (Lynn, J.); *TexVa, Inc. v. Boone*, 300 S.W.3d 879, 887 (Tex. App.—Dallas 2009, pet. denied).

In *Miller*, the nonresident defendant owed a duty of loyalty to a Texas partnership based in Texas, and the plaintiff alleged breach of that duty.  *Id.* at *1-3.  Judge Lynn held that the court had personal jurisdiction over the defendant for the breach of loyalty claim:

> [T]he assertion of jurisdiction arises out of Defendant's contacts with Texas.  Plaintiff claims that Defendant has breached his duties of care and loyalty, ***duties that exist only because of Defendant's connections with Texas***.  Defendant's alleged partnership agreement with a Texas resident and work in furtherance of that partnership are exactly why Defendant is being sued.  There is also no violation of fundamental fairness here.  The Plaintiff came to Texas to perform his partnership duties, which are governed by Texas law.  ***He should not be surprised that a later breach of those duties could bring him into a Texas court***.

*Id.* at *3 (emphasis added).  Just like the defendant in *Miller*, the duties the Shapiras owe to Excentus exist only because of the Shapiras' connections with Texas.  The Shapiras were elected as directors of a Texas corporation based in Dallas (Excentus), traveled to Texas to attend at least one Board of Directors meeting, attended numerous other Excentus Board of Directors meetings held in Texas by telephone (and obtained confidential information about Excentus' business and patents that they later used with Giant Eagle), executed Written Consents of the Board of Directors and sent them to Texas (including a Written Consent to amend Excentus Bylaws), sent to Texas a letter citing Texas statutes and Texas cases demanding additional meetings of the Excentus Board of Directors, sent numerous emails to Texas regarding Excentus business and Board issues, and violated their duties owed to Excentus – which is exactly why they are being sued.  Pl. App. 6-9; Compl. (Dkt. 22).  As in *Miller*, the Shapiras should not be surprised that their breach of the duties they owe to Excentus has brought them into a Texas court.

The *TexVa* case (cited by the Shapiras) holds, under facts similar to this case, that ***personal jurisdiction exists in Texas over the nonresident directors of a Texas corporation based in Texas***.  *TexVa*, 300 S.W.3d at 887-91.  The *TexVa* court found that, by virtue of the nonresidents agreeing to serve on the board of directors of an organization headquartered in Texas and travelling to Texas on two occasions for business:

- The contacts with Texas were "significant" under the traditional minimum contacts test (*Id.* at 887-88);

- The nonresidents had "purposely availed themselves of the privilege of conducting business in Texas" (*Id.* at 890);

- Because the nonresident directors' breached a fiduciary duty owed to the Texas corporation based in Texas, the court had "no difficulty concluding that the litigation in this case arises from the appellees' contacts with the forum" (*Id.* at 890); and

- Exercising personal jurisdiction over them did not offend traditional notions of fair play and substantial justice (*Id.* at 889-90).

The nonresident directors were therefore subject to personal jurisdiction in Texas because their Texas contacts gave rise to the litigation. *Id.* at 887-91. The same result is required here, where the Shapiras accepted directorship positions with Excentus, a Texas company that the Shapiras know is headquartered in Texas, routinely attended Excentus Board of Directors meetings held in Texas (in person and by telephone), executed and sent to Texas at least two Written Consents in lieu of Board meetings, and sent emails and at least one letter (citing Texas statutes and cases) to Texas regarding Excentus business and Board issues. Pl. App. 5-8, 72-73, 80-110; *see Leap Wireless Int'l, Inc. v. MetroPCS Comm., Inc.*, No. 2:06-CV-240, 2007 WL 541428, at *2-3 (E.D. Tex. Feb. 15, 2007) (Ward, J.) (personal jurisdiction exists over nonresident defendant whose activities included "phone calls to Texas, at least one meeting in Texas, and a 'commitment letter' sent to General Wireless [in Texas]"); *Cole v. Tobacco Inst.*, 47 F. Supp. 2d 812, 815 (E.D. Tex. 1999) (personal jurisdiction exists in Texas over British company based in Britain even if company's representatives never physically entered Texas). Excentus' claim against the Shapiras for breaching their duties of loyalty and utmost good faith, and the damages caused to Excentus by such breaches, are directly related to the Shapiras' contacts with Texas. *See* Compl. (Dkt. 22) ¶¶ 32-37; *Burger King*, 471 U.S. at 472 (specific jurisdiction is proper when a nonresident directs his activities at residents and the litigation relates to those activities); *Miller*,

2008 WL 4131725, at *3; *TexVa*, 300 S.W.3d at 887; *Leap Wireless*, 2007 WL 541428, at *2-3; *Cole*, 47 F. Supp. 2d at 815.

The Shapiras rely on *Shaffer v. Heitner*, 433 U.S. 186 (1977) to argue that this Court does not have personal jurisdiction over them because they are nonresident directors.  The Shapiras are wrong.  First, as the United States Supreme Court observed, *Shaffer* "stands for nothing more than the proposition that when the 'minimum contact' that is a substitute for physical presence consists of property ownership it must, like other minimum contacts, be related to the litigation." *Burnham v. Superior Court of California*, 495 U.S. 604, 620 (1990).  Second, and more importantly as it relates to this case, *Shaffer* did not involve a tort committed in Delaware, where the lawsuit was filed.  Rather, while the corporation at issue in *Shaffer* was organized under the laws of Delaware, its principal place of business was in Arizona, and the activities giving rise to the asserted claim took place in Oregon.  *Shaffer*, 433 U.S. at 189-90.  Because no relationship with Delaware existed other than it being the state of incorporation, the facts and legal principles involved in *Shaffer* do not mesh with the facts or legal principles of this case – here, Excentus is based in Texas, the Shapiras attended board meetings in Texas (in person and by telephone), and the Shapiras obtained from such Texas meetings confidential information about Excentus' business and the patents they later caused Giant Eagle to use without compensating Excentus, thereby breaching their duties to Excentus and causing loss to Excentus in Texas.  Pl. App. 2, 6-9.  The facts of this case are different from *Shaffer*, where the nonresidents had no connection with Delaware, no tort was committed in Delaware, and the corporation at issue was not located in Delaware.  *Shaffer* does not control.

By virtue of their tortious conduct in and directed toward Texas and Texas-based Excentus (which is exactly why they are being sued), the Shapiras have affirmatively and

intentionally established a sufficient relationship with Texas that exceeds the minimum contacts threshold of the Due Process Clause.  *See Burger King*, 471 U.S. at 476 n. 18; *Miller*, 2008 WL 4131725, at *3; *TexVa*, 300 S.W.3d at 887-91; *Leap Wireless*, 2007 WL 541428, at *2-3; *Cole*, 47 F. Supp. 2d at 815.

**B.     The Exercise of Specific Personal Jurisdiction Over the Shapiras Comports With Traditional Notions of Fair Play and Substantial Justice.**

The assertion of jurisdiction in Texas not only satisfies the minimum contacts prong of the due process analysis, but also comports with the fairness and reasonableness requirement. Factors to consider in this analysis include:  (i) the burden on the defendant, (ii) the forum state's interest in adjudicating the case, (iii) the plaintiff's interest in obtaining effective and convenient relief, (iv) the judicial system's interest in resolving controversies in the most efficient manner, and (v) the shared interest of furthering substantive social policies.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *see also Law Offices of Ben C. Martin*, 2007 U.S. Dist. LEXIS 101728, at *14.

The exercise of personal jurisdiction over the Shapiras in this case is reasonable and fair. With respect to the first and second factors identified in *World-Wide Volkswagen*, as the *TexVa* court noted, "in multi state disputes, someone will always be inconvenienced," and "Texas has 'a strong, even compelling interest in providing a forum for redressing harm done by corporate fiduciaries, harm endured principally by a resident of [Texas].'"  *TexVa*, 300 S.W.3d at 891 (quoting *Rittenmeyer v. Grauer*, 104 S.W.3d 725, 732 (Tex. App.—Dallas 2003, no pet.)).  The third *World-Wide Volkswagen* factor also weighs in favor of exercising jurisdiction over the Shapiras, as Excentus has a substantial interest in obtaining the requested relief and believes that this forum offers the best opportunity for effectively and conveniently adjudicating this dispute. Under the fourth *World-Wide Volkswagen* factor, all of the parties necessary to fully adjudicate

this dispute (*i.e.*, Excentus, Giant Eagle, Daniel Shapira, David Shapira) are before this Court and are engaged in this litigation, so efficiency would dictate that the case, with all of its inextricably intertwined causes of action, continue toward its conclusion in this Court. Finally, substantive social policies are furthered by this Court being a vehicle for a Texas resident to obtain relief in Texas for tortious actions committed in and/or directed toward Texas by an out-of-state defendant. Because all of the factors weigh in favor of the exercise of specific personal jurisdiction over the Shapiras, the principles of "fair play and substantial justice" are secure.

Thus, following the rationale in *Burger King*, *Miller*, *TexVa*, *Leap Wireless* and *Cole*, the Court should deny the Shapiras' motion to dismiss for lack of personal jurisdiction. *See Burger King*, 471 U.S. at 476 n. 18; *Miller*, 2008 WL 4131725, at *3; *TexVa*, 300 S.W.3d at 887-91 *Leap Wireless*, 2007 WL 541428, at *2-3; *Cole*, 47 F. Supp. 2d at 815.

**3.  Excentus Properly Pleaded its Claim that the Shapiras Breached the Duty of Loyalty.**

As the Court recently stated, motions to dismiss under Federal Rule 12(b)(6) are disfavored and rarely granted. *Cox v. Central Insurex Agency, Inc.*, No. 3:11-CV-2267-B, 2012 WL 253882, at *2 (N.D. Tex. Jan. 26, 2012) (Boyle, J.) (citing *Harrington v. State Farm Fire & Cas. Co.,* 563 F.3d 141, 147 (5th Cir. 2009)). Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In evaluating the sufficiency of a claim, the court construes the complaint in the light most favorable to the plaintiff and assumes as true all of the pleaded allegations. *Harrington*, 563 F.3d at 147 (reversing the lower court's dismissal under Rule 12(b)(6)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007) ("[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with allegations in the complaint."). Thus, to survive a Rule 12(b)(6) motion, a plaintiff must only plead "'enough facts

to state a claim for relief that is plausible on its face.'" *Cox*, 2012 WL 253882, at *2 (quoting *Twombly*, 550 U.S. 544 (2007)).

The Shapiras concede that Excentus has properly pleaded the first element of its breach of loyalty claim – that the Shapiras owe Excentus a duty of loyalty.  Thus, the Shapiras contend that Excentus has failed to plead only the other two elements:  (i) that the Shapiras breached their duty of loyalty; and (ii) that the breach resulted in an injury to Excentus or a benefit to the Shapiras.  [Shapiras' Brief, p. 9].  The Shapiras' Rule 12(b)(6) motion overlooks that Excentus has pleaded the following facts, which state a plausible claim against the Shapiras:

(i) That the Shapiras have refused to act in good faith to negotiate a license or other agreement to provide Giant Eagle with the right to use the Excentus Patents and to compensate Excentus fairly for such use (Compl. ¶ 29);

(ii) That David Shapira contended in telephone calls with Excentus Chairman and CEO, Dickson Perry, that Giant Eagle has a license to use the Excentus Patents, despite the General Services Agreement's plain language to the contrary (*Id.* ¶ 30);

(iii) That, at the Shapiras' direction, knowledge, and consent, Giant Eagle is using the Excentus Patents daily without fairly compensating Excentus for such use (*Id.* ¶ 30);

(iv) That the Shapiras have used Excentus' confidential information to gain an advantage in the distribution, promotion, and sale of gift cards inside Giant Eagle's stores without remuneration to Excentus (*Id.* ¶ 32);

(v) That the Shapiras have caused Giant Eagle to infringe the Excentus Patents without remuneration to Excentus (*Id.* ¶ 33);

(vi) That the Shapiras have interfered with the implementation of Excentus' Fuel Rewards Network (*Id.* ¶ 34);

(vii) That Excentus' damages are, at least in part, the proceeds, profits, funds, and other consideration obtained through the Shapiras' breaches of the duties they owe to Excentus (*Id.* ¶ 36).

These are the well-pleaded facts that the Court must construe in the light most favorable to Excentus and accept as true.  *See Harrington*, 563 F.3d at 147.  Excentus is not required to plead additional detailed facts – the facts pleaded are sufficient to allege that the Shapiras are placing their own interests and the interests of Giant Eagle ahead of the interests of Excentus, thereby

denying Excentus the remuneration owed.  This is more than enough to state a plausible claim for breach of the duty of loyalty against the Shapiras.

The Shapiras erroneously contend that "[because] the Shapiras are minority directors, Excentus has not alleged – and cannot allege – a breach of fiduciary claim 'that is plausible on its face.'"  [Shapiras' Brief (Dkt. 28), pp. 10-11].  To the contrary, the case quoted at page 10 of the Shapiras' Brief, *Soporex, Inc. v. Linehan*, 2011 WL 5911674 (Bankr. N.D. Tex Nov. 28, 2011) (Houser, J.), belies the Shapiras' statement of the law.  In *Soporex*, Judge Houser held that the Bankruptcy Trustee had stated a claim for breach of the duty of loyalty against Linehan (a minority director) arising from Linehan's self-dealing:

> These allegations [of self-dealing by Linehan], taken as true, are sufficient to state a claim against Linehan, notwithstanding the business judgment rule, because they ***plausibly suggest that Linehan was motivated by considerations of self-interest rather than the best interest of the corporations***.  The Officers' Motion will be denied with respect to these allegations.

*Soporex*, 2011 WL 5911674, at *53 (emphasis added).  The law is not what the Shapiras suggest, and directors – regardless of their minority status – can be liable for breaching their duty of loyalty and utmost good faith.  *See Soporex*, 2011 WL 5911674, at *53; *Floyd v. Hefner*, 556 F. Supp. 2d 617, 649-50 (S.D. Tex. 2008) ("'The duty of loyalty dictates that a corporate officer or director must act in good faith and must not allow his personal interest to prevail over the interest of the corporation.'") (quoting *Gearhart Indus., Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 719 (5th Cir. 1984)).

The Delaware cases relied upon by the Shapiras[3] – which are based on the premise that, by definition, a minority director cannot cause the company to enter a transaction – apply only when a minority director is alleged to have breached his duty of loyalty ***by convincing the other***

---

[3] *In re NYMEX S'holder Litig.*, 2009 WL 3206051, at *6 (Del. Ch. Sept. 30, 2009); *In re Frederick's of Hollywood, Inc.*, 2000 WL 130630, at *7 (Del. Ch. Jan. 31, 2000).

***board members to cause the company to enter a transaction*** benefitting that director.  This rule does not apply to Excentus' claim against the Shapiras for obtaining personal benefits for themselves and Giant Eagle, outside of any contract or transaction with Excentus.

The Shapiras also are wrong in their argument that Article Ten of Excentus' Amended and Restated Articles of Incorporation (the "Excentus Articles") contains an exculpatory clause relieving directors from all liability to Excentus.  Rather than addressing ***all*** liability, Article Ten relieves directors only "from liability that might otherwise exist ***from contracting with the Corporation [Excentus]*** for the benefit of himself or herself or of any Person in which he or she has an interest," as long as that interest was disclosed or known to Excentus.  Def. App. 3 (emphasis added).  As noted above, Excentus did not allege that its claims against the Shapiras result from its agreements with Giant Eagle or the Shapiras; rather, the Complaint makes clear that Excentus' claim against the Shapiras is based in tort on the Shapiras and Giant Eagle's use of the Excentus intellectual property without paying for it (*i.e.*, ***without contracting*** with Excentus).

Under the Shapiras' argument, they could never be liable to Excentus or its shareholders for any corporate misconduct, including the most egregious acts of corporate misconduct imaginable.  Article Ten does not grant the Shapiras such a "license to kill."  To the contrary, Article Ten is irrelevant because Excentus has not claimed the Shapiras are liable for ***contracting with*** Excentus.

The Court should deny the Shapiras Rule 12(b)(6) Motion to Dismiss for failure to state a claim.  In the alternative, if the Court believes the Complaint is deficient in any way, Excentus should be afforded an opportunity to amend its pleadings to cure any alleged defects.

## CONCLUSION

Excentus sued David and Daniel Shapira for violating their duties of loyalty and utmost good faith owed as directors of Excentus.  The narrow forum selection clause in the Stock Purchase Agreements does not apply to Excentus' claim against the Shapiras because the claim does not "aris[e] out of" the Stock Purchase Agreements.  This Court has personal jurisdiction over the Shapiras because the duties they breached relate to their substantial contacts with Texas, and their tortious acts were committed (at least in part) in Texas and damaged Excentus in Texas.  Finally, Excentus has properly pleaded a cause of action for breach of the duty of loyalty against the Shapiras, who as directors are liable to Excentus for their self-motivated conduct that harmed Excentus.  As a result, Defendants Daniel and David Shapira's Motions to Dismiss should be denied.  In the alternative, in the event the Court believes the Complaint is deficient in any way, Excentus should be afforded an opportunity to amend its pleadings to cure any alleged defects.

| Dated:  February 29, 2012 | Respectfully submitted, |
|---|---|
| | By:    /s/ *Brett C. Govett* |
| | Brett C. Govett |
| | Texas Bar No. 08235900 |
| | Karl G. Dial |
| | Texas Bar No. 05800400 |
| | FULBRIGHT & JAWORSKI, L.L.P. |
| | 2200 Ross Avenue, Suite 2800 |
| | Dallas, Texas 75201 |
| | Telephone:  (214) 855-8000 |
| | Facsimile:  (214) 855-8200 |
| | Email:  bgovett@fulbright.com |
| | Email:kdial@fulbright.com |
| | |
| | ATTORNEYS FOR PLAINTIFF EXCENTUS CORPORATION |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service in compliance with Local Rule 5.1(f) are being served with a notice of electronic filing of this pleading via the Court's CM/ECF system in compliance with Federal Rule of Civil Procedure 5 and Local Rule LR 5.1.

/s/ *Brett C. Govett*

Brett C. Govett