UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EXCENTUS CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:11-CV-3331-B |
| | § | |
| GIANT EAGLE, INC., DAVID | § | |
| SHAPIRA, and DANIEL SHAPIRA, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the Motions to Dismiss for Improper Venue, Lack of Personal
Jurisdiction, and Failure to Plead a Legally Sufficient Claim filed by Defendants Giant Eagle, Inc.
("Giant Eagle") (doc. 24) and David and Daniel Shapira (the "Shapiras") (doc. 27), both filed
January 31, 2012. For the reasons listed below, the Court finds that venue is improper and therefore
**DISMISSES** Excentus' Second Amended Complaint ("SAC") without prejudice to refiling in a court
of proper venue.

## I.

## BACKGROUND

This case concerns tort claims stemming from a soured business relationship between the
parties. Starting in 2001, the parties began discussing a project whereby Excentus Corporation
("Excentus") would provide Giant Eagle with technology in support of Giant Eagle's efforts to design
a loyalty rewards program for Giant Eagle grocery stores. These types of programs, increasingly
common across the country, provide grocery store or other retail establishment customers with

discounts at gasoline stations, gift cards, or other types of rewards. Pursuant to these discussions, the parties entered into a Software License and General Services Agreement ("Software License") in 2002 and a later Addendum in 2010. Through the Software License, Excentus provided computer software that Giant Eagle uses in its "fuelperks!" program, which is Giant Eagle's specific gas-grocery cross-marketing program using fuel discounts as consumer loyalty rewards.

The parties' relationship expanded over time as Giant Eagle invested in Excentus twice in 2004 and 2005 through its Stock Purchase Agreements, becoming one of Excentus' largest shareholders and gaining two seats on Excentus' Board of Directors.[1] Unfortunately, relations between the parties eventually deteriorated due to Excentus' claims that Giant Eagle failed to properly support Excentus' current and future business plans as required by the parties' Stock Purchase Agreements and also failed to obtain a license to Excentus' patents for use in Giant Eagle's fuelperks! program and failed to pay for such license. Excentus now asserts claims against Giant Eagle and the Shapiras, directors or officers of both Giant Eagle and Excentus, for breach of duties of loyalty and good faith, patent infringement, and unfair competition. Excentus also seeks declaratory judgement regarding whether Giant Eagle has a license to the patents at issue pursuant to the parties' Software License. Giant Eagle now seeks dismissal of Excentus' claims for improper venue, lack of personal jurisdiction, and failure to state a claim upon which relief may be granted. Specifically, Giant Eagle argues that venue is improper due to forum selection clauses contained in contracts

---

[1]Although not directly referred to in the Second Amended Complaint, the Stock Purchase Agreements by which Giant Eagle gained seats on Excentus' Board of Directors are referred to indirectly. *See* SAC ¶¶ 13-15. Further, a court may look at evidence outside of the complaint in resolving a motion to dismiss for improper venue. *See, e.g., Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237-38 (5th Cir. 2009). Accordingly, the Court looks to the Stock Purchase Agreements and other documents in addition to the documents attached to the Second Amended Complaint in resolving Defendants' Motions to Dismiss for Improper Venue.

between the parties, Defendants have insufficient contacts with Texas that would subject them to personal jurisdiction in this Court, and Defendants are relieved from any liability pursuant to the parties' various contracts.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(3) ("Rule 12(b)(3)") provides for the dismissal of civil actions for improper venue. In relevant part, 28 U.S.C. § 1391(b) states that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." A motion to dismiss for improper venue requires that the facts be viewed in the light most favorable to the plaintiff. *Ambraco*, 570 F.3d at 237-38 (citation omitted). Moreover, "'the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments.'" *Id.* at 238 (citation omitted).[2]

---

[2]Although courts have not been consistent as to which party bears the burden of proof on a Rule 12(b)(3) motion for improper venue, several of them have found that the burden of proving that venue is proper lies with the plaintiff. *See, e.g., Inst. for Creation Research Graduate Sch. v. Paredes*, No. 3-09-cv-693-B, 2009 WL 4333366, *2 (N.D. Tex. Dec. 1, 2009); *Tracfone Wireless, Inc. v. Carson*, No. 3:07-cv-1761-G, 2008 WL 4107584, *7 (N.D. Tex. Aug. 28, 2008); *Psarros v. Avior Shipping, Inc.*, 192 F. Supp. 2d 751, 753 (S.D. Tex. 2002); *Advanced Dynamics Corp. v. Mitech Corp.*, 729 F. Supp. 519, 519 (N.D. Tex. 1990). The Court also notes the opinion of 5 Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and Procedure* § 3826 (3d ed. 2007) ("The federal courts are divided on which party bears the burden on a motion to dismiss for improper venue . . . . But what has been characterized as 'the better view,' and the position that probably represents the weight of judicial authority, is that, when an objection has been raised, the burden is on the plaintiff to establish that the district he or she has chosen is a proper venue . . . . This approach is consistent with the plaintiff's threshold obligation to show that the case belongs in the particular district court in which suit has been instituted.") (citations omitted).

## III.

## ANALYSIS

Giant Eagle moves the Court to dismiss the case for improper venue, alleging that venue is not proper in the Northern District of Texas because of forum selection clauses in two of the contracts between the parties. Specifically, Giant Eagle argues that its Stock Purchase Agreements with Excentus granted it a full license to use any and all Excentus intellectual property and its purported obligations that it allegedly failed to meet arose out of the Stock Purchase Agreements, and therefore the forum selection clauses in the Stock Purchase Agreements are applicable. In response, Excentus argues that the two contracts containing these forum selection clauses have nothing to do with its claims in this case and therefore the forum selection clauses are inapplicable in this case.

The parties' Stock Purchase Agreements set forth as follows:

8.06 GOVERNING LAW; VENUE. This agreement shall be governed by and construed in accordance with the laws of the State of Texas without giving effect to the conflict of laws rules or choice of laws rules thereof or of any state. Venue for any action arising out of this agreement shall reside exclusively in the county in which the respondent's principal offices are located.

Giant Eagle Mot. App. 53, 89.[3] Giant Eagle is located in Allegheny County, Pennsylvania, and Giant Eagle argues that, given its reliance on the Stock Purchase Agreements as a defense to Excentus' claims, these claims must be brought in Allegheny County. The Court will first look to whether the forum selection clauses at issue are enforceable and then to whether such clauses apply to Excentus' claims in this case.

---

[3]This provision is identical in both of the Stock Purchase Agreements and is numbered § 8.06 in both.

i.      Enforceability of the Forum Selection Clause.

"[A] forum selection clause is prima facie valid and should be enforced unless the resisting party shows that enforcement would be unreasonable." *Seattle-First Nat'l Bank v. Manges*, 900 F.2d 795, 799 (5th Cir. 1990) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). Federal law governs whether forum selection clauses are enforceable. *Von Graffenreid v. Craig*, 246 F. Supp. 2d 553, 560 (N.D. Tex. 2003) (citing *Haynsworth v. Corp.*, 121 F.3d 956, 962 (5th Cir. 1997)). Under Fifth Circuit precedent, courts are to presumptively enforce forum selection clauses with few exceptions. *See Haynsworth*, 121 F.3d at 962-63. The presumption can only be overcome by a clear showing that the clause is unreasonable under the circumstances. *Id.* at 963. The party resisting the enforcement bears the "heavy burden" of showing that one of the following makes the clause unreasonable: "(1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state." *Id.* (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991); *M/S Bremen*, 407 U.S. at 12-13, 15, 17, 18).

Excentus does not argue that any of the foregoing factors render the forum clauses unreasonable, focusing instead on its contention that the forum selection clauses are inapplicable to its claims. Nevertheless, the Court finds that it is neither unfair nor unreasonable to require the party initiating litigation to sue in the county of the respondent, as agreed to by the parties, which evidences the parties' apparent desire to discourage litigation. *See Abbott Labs. v. Takeda Pharm. Co.*,

476 F.3d 421, 422 (7th Cir. 2007) ("The purpose of specifying two forums in this way is to discourage either side from instituting litigation, because whoever sues must litigate on the other party's turf.") The Court also notes that the contracts appear to have been negotiated at arm's length and there is no indication of fraud. The Court further finds that litigating Excentus' claims in Pennsylvania will not deprive Excentus of its day in court or any legal remedy, and enforcement of the forum selection clause does not contravene a strong public policy of any state. *See Haynsworth*, 121 F.3d at 963. Accordingly, the Court finds that the forum selection clauses contained in the Stock Purchase Agreements are valid and enforceable.[4]

ii.     Does the Forum Selection Clause Apply in This Case?

Having found that the forum selection clauses are valid, the Court must determine whether they apply to Excentus' claims in this case. Giant Eagle points to several provisions of the Stock Purchase Agreements to argue that the forum selection clauses apply. Specifically, Giant Eagle points to ¶ 3.09(d) of both Agreements, in which Excentus represented that "none of the Intellectual Property currently sold or licensed by [Excentus] to any Person . . . infringes upon or otherwise violates any Intellectual Property rights of others." *See* Giant Eagle Mot. App. 36, 73. Giant Eagle also points to ¶ 7.01(a) of both Agreements, in which Excentus fully indemnified Giant Eagle for any claim arising out of "any misrepresentation or breach of [this] warranty" by Excentus. *Id.* at App. 49, 86-87. Giant Eagle further argues that the patents now claimed to have been infringed, U.S. Patent

---

[4]The Court also finds that the forum selection clauses contained in the Stock Purchase Agreements are mandatory, rather than permissive, given that the clauses state that venue "shall reside *exclusively* in the county in which the respondent's principal offices are located." (emphasis added). *See, e.g., Von Graffenreid*, 246 F. Supp. 2d at 560 ("Where the [forum selection clause] contains clear language showing that jurisdiction is appropriate only in a designated forum, the clause is mandatory." ) (citations omitted).

Nos. 6,321,984 (the "'984 Patent"); 6,332,128 (the '128 Patent); and 7,383,204 (the "'204 Patent"), were issued or were based on claimed technology that existed and was disclosed before Excentus represented that none of its technology infringed any other patents. It also argues that Excentus' representation included the technology that Excentus licensed to Giant Eagle under the Software License. In its view, Excentus' warranty of non-infringement and indemnification includes the '984, '128, and '204 Patents, which were acquired by Excentus from Auto Gas in 2008. Giant Eagle also notes ¶ 5.06 of the 2004 Stock Purchase Agreement, which granted Giant Eagle "the non-exclusive right to license [Excentus'] Products and to establish retail/gas station alliances utilizing [Excentus'] Products in any market in which [Giant Eagle] operates as of or after the Closing Date."[5] Giant Eagle Mot. App. 47-48. "Products" are defined in the Stock Purchase Agreement as "the technology which [Excentus] has licensed to [Giant Eagle] . . . and all improvements and enhancements thereto, and the Company's Reward Marketing Engine software module." *Id.* at 48, 84-85. Under these terms, Giant Eagle argues, "the 2004 Stock Purchase Agreement gave Giant Eagle the right to use whatever Excentus technology – including patented technology – it needed for its fuelperks! program." Giant Eagle Mot. Br. 7. In its view, it has a license granted under the Stock Purchase Agreements, and such license is a complete defense to the patent infringement claims. Giant Eagle also argues that Excentus' breach of duty of loyalty claims and unfair competition claims are also barred by such alleged license, given the Second Amended Complaint's allegations that Giant Eagle "gained an unfair advantage in the market by capitalizing on Excentus' efforts and success in its fuel discount systems by infringing its patents . . . which are acts that constitute unfair competition under the

---

[5]The 2005 Stock Purchase Agreement contains an identical provision. Giant Eagle Mot. App. 84-85.

common law . . . ," SAC ¶¶ 64-65, and the complaint's allegation that the Shapiras breached their

fiduciary duty to Excentus by claiming that the Software License "granted Giant Eagle a license to

the Excentus Patents," SAC ¶¶ 30, 33.

In response, Excentus argues that its tort claims fall outside the scope of the forum selection

clauses because its claims do not involve an interpretation of the Stock Purchase Agreements, and

it also argues that none of the elements of its claims "arise out of" the Stock Purchase Agreements.

In its view, it may "prove and prevail on all of its tort claims against Giant Eagle without reference

to, or interpretation of, the Stock Purchase Agreements."[6] Pl.'s Resp. Giant Eagle Mot. 6. Excentus

further argues that forum selection clauses "do not apply when the alleged nexus between the action

and the contract arises only with respect to a claimed defense."[7] *Id.* at 8 (citing *Philips v. Audio Active

Ltd.*, 494 F.3d 378, 391-92 (2d Cir. 2007)).

The Court finds that the Stock Purchase Agreements' forum selection clauses are applicable

in this case, and therefore venue is improper. The Court first notes that whether a forum selection

clause applies to a plaintiff's claims is a case-specific inquiry. *See, e.g., Terra Int'l, Inc. v. Miss. Chem.

Corp.*, 119 F.3d 688, 694 (8th Cir. 1997). Without deciding whether the Stock Purchase Agreements

do in fact grant Giant Eagle a license to Excentus' patents and are a defense to the breach of duty

of loyalty and unfair competition claims, Giant Eagle's defense requires the Court to interpret the

---

[6]As noted by Giant Eagle, though, Excentus does rely on, *inter alia*, the Stock Purchase Agreements in arguing that this Court has both general and specific jurisdiction with respect to Excentus' claims against Giant Eagle.

[7]Excentus also argues that the February 2010 Addendum to the Software License "makes it clear that Giant Eagle has no license to the Excentus patents" and the purported warranty of noninfringement does not provide a defense because "the warranty given expired 18 months after the closing date, and the software Excentus licensed does not contain all the elements for infringement of the patents Excentus acquired years later." Pl.'s Resp. Giant Eagle Mot. 9-10.

Stock Purchase Agreements. As explained by the court in *Aerus L.L.C. v. Pro Team, Inc.*, No. 3:04-cv-1985-M, 2005 WL 1131093 (N.D. Tex. May 9, 2005), "[i]f enforcement of a provision in [an agreement with a forum selection clause] is . . . a defense to a claim, that claim involves a right or remedy under the contract and should fall within the scope of the forum selection clause." *Id.* at *8 (citing *Penn, L.L.C. v. New Edge Network, Inc.*, No. 03 C 5496, 2003 WL 22284208, *2 (N.D. Ill. Oct. 3, 2003)); *see also Pinnacle Interior Elements, Ltd. v. Panalpina, Inc.*, No. 3:09–cv-0430-G, 2010 WL 445927, *5 (N.D. Tex. Feb. 9, 2010) ("When the plaintiff raises tort claims, the applicability of a contractual forum-selection clause to those claims 'depends on whether resolution of the claims relates to interpretation of the contract.'") (citations omitted). The *Aerus* court found that the defendant's defense to a patent infringement claim was based on a contract containing a forum selection clause, and therefore "the allegations in this claim [had] a 'direct or indirect connection, link or association with, or relation to" that contract containing the forum selection clause. *Aerus*, 2005 WL 1131093, at *8 (citing *Smith v. Lucent Techs., Inc.*, No. Civ.A. 02-0481, 2004 WL 515769, *11 (E.D. La. Mar. 16, 2004)). Accordingly, the court found the forum selection applicable to the patent infringement claim, and it later found that the forum selection clause was also applicable to the plaintiffs' other claims, including its unfair competition claim.

Here, the Court must look to the Stock Purchase Agreements to determine whether Giant Eagle's defenses are valid, and therefore the forum selection clauses contained in them are applicable. Excentus' claims do not rely on the Stock Purchase Agreements, but resolution of these claims clearly requires the Court to construe the Stock Purchase Agreements, given Giant Eagle's reliance

on the Agreements as a defense.[8] *See Pinnacle Interior Elements*, 2010 WL 445927, at *5. Further, the Court must look to the Stock Purchase Agreements in order to resolve *all* of Excentus' claims, given that they involve Giant Eagle's obligations under the Stock Purchase Agreements,[9] whether Giant Eagle had a license to the patents at issue, or whether such purported license is a defense to Excentus' claims. Accordingly, the Court finds both that the forum selection clause of the Stock Purchase Agreements applies to all of Excentus' claims and also that venue is improper as to all of these claims.[10]

The Court reiterates that its finding that the forum selection clause is applicable does not resolve the issue of whether the Stock Purchase Agreements are in fact valid defenses to Excentus' claims. However, such determination requires the Court to examine the Stock Purchase Agreements, thereby invoking the forum selection clauses found in these Agreements. Accordingly, venue is not

---

[8]The Court notes the *Phillips* court's finding that a forum selection clause, contained in a contract that was relevant only as a defense, was without effect, *Phillips*, 494 F.3d at 391, but finds persuasive the warning of the court in *Penn, L.L.C. v. New Edge Network, Inc.*, No. 03 C 5496, 2003 WL 22284207 (N.D. Ill. Oct. 3, 2002) which found that such a rule would allow a "clever party" to "simply avoid its contractual obligations through sophistry." *Id.* at *2. The Court further notes that the basis for the *Phillips* court's ruling, a narrow interpretation of phrases such as "arising out of," has been rejected by some courts. *See, e.g.,* *Appliance Zone, LLC v. NexTag, Inc.*, 2009 WL 5200572, *6 (S.D. Ind. 2009) (noting that both the Seventh and Ninth Circuits interpreted "arising out of" more broadly than the Second Circuit) (citations omitted).

[9]As stated previously, at least some of the obligations allegedly not met by the Shapiras were allegedly assumed by Giant Eagle at the time of the Stock Purchase Agreements. *See, e.g.,* SAC ¶ 15 "As part of the investment in Excentus, Giant Eagle committed to suport Excentus' current and future business and plans.").

[10]The Court also finds the Shapiras may invoke the forum selection clause of the Stock Purchase Agreements given the relatedness of the Shapiras to the dispute between Excentus and Giant Eagle. *See Excel Mktg. Solutions Inc. v. Direct Fin. Solutions LLC*, 2011 WL 1833022, at *6 (N.D. Tex. May 13, 2011) ("A non-party can be bound to a forum selection clause if the nonparty is 'closely related to the dispute such that it becomes foreseeable that it will be bound.") (citing, *inter alia, Hugel v. Corp. of Lloyds*, 999 F.2d 206 (7th Cir. 1993)). Indeed, the complaint itself explains that "the actions of the Shapiras described herein constitute the acts of Giant Eagle" and "[r]eference to Giant Eagle is reference to these acts." SAC ¶ 28. Accordingly, venue is improper as to the Shapiras as a result of the forum selection clause contained in the Stock Purchase Agreements, for the reasons discussed above.

proper in the Northern District of Texas, and Excentus' Second Amended Complaint is hereby **DISMISSED** for improper venue.

## IV.

## CONCLUSION

For the reasons discussed above, the Court finds that venue is improper in the Northern District of Texas and **GRANTS** Giant Eagle's and the Shapiras' Motions (docs. 24, 27) to the extent they seek dismissal of Excentus' Second Amended Complaint under Rule 12(b)(3). The Second Amended Complaint is hereby **DISMISSED**. This dismissal is without prejudice to refiling in a court of proper venue.[11]

SO ORDERED.

Dated: July 2, 2012.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[11]Given that the Court has dismissed the Second Amended Complaint under Rule 12(b)(3), the Court does not express an opinion on Defendants' contention that dismissal is also proper for lack of personal jurisdiction over all Defendants and for failure to state a claim upon which relief can be granted.